UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No.1:03-CR-054-02 |
|     Plaintiff, | |
| vs. | |
| Lindyn Miranda, | |
|     Defendant. | |

**ORDER**

Defendant Lindyn Miranda has filed a motion to "modify" her prior guilty plea and judgment, seeking an order to vacate her plea and the subsequent judgment of conviction entered in this case. She contends that her attorney did not advise her of the immigration consequences of her plea, and that she is not able to apply for naturalization as a result of her conviction. Her motion does not cite the legal basis for her request.

Miranda and her co-defendant, Alberto Taboada, were indicted in April 2003 on charges arising from the use of counterfeit credit cards. Miranda entered into a plea agreement with the United States on October 23, 2003, and agreed to plead guilty to Count 2, aiding and abetting in bank fraud. At her change of plea hearing on October 23, Miranda stated that she was originally from Cuba and was a permanent resident of the United States. The Government noted that because she was from Cuba, there was no likelihood that she would be deported as a result of

-1-

her conviction.  Her pre-sentence report noted that Miranda is a permanent resident alien admitted on January 6, 1990, when she was eleven years old.  She has never been deported, and the report stated that immigration authorities "will make a determination if it will be appropriate to initiate a deportation hearing against Miranda once she is sentenced in the instant offense."  (PSR at ¶47)  This Court sentenced Miranda on February 27, 2004 to term of 14 days incarceration with credit for 14 days already served, and five years of supervised release.  (Doc. 39)

On May 3, 2012, more than eight years after she was sentenced, Miranda filed her motion to set aside her guilty plea.  She submitted an affidavit stating that her lawyer did not advise her to consult with an immigration attorney, nor did he advise her of the immigration consequences of her guilty plea.  She avers that if she had known that she would be denied naturalized citizenship, she would not have pled guilty.  (Doc. 76, Miranda Affidavit)

The Government responded to her motion by moving to dismiss it, arguing that this Court lacks jurisdiction to grant any collateral relief.  Miranda did not appeal her conviction, and she is not in custody, as she completed her supervision in February 2009.  The Government cites <u>Blanton v. United States</u>, 94 F.3d 227, 231 (6th Cir. 1996), where the court noted that a motion brought pursuant to 28 U.S.C. §2255 is unavailable to a

petitioner who has completely served her sentence.

The Court agrees that it lacks statutory jurisdiction to grant Miranda the relief she seeks. 28 U.S.C. §2255(a) states that "a prisoner in custody" may move to vacate, set aside or correct her sentence. As she is not in custody, she may not bring a motion under this statute. Moreover, Section 2255(f) contains a one-year statute of limitations that runs from the latest of: "(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

Miranda relies on <u>Padilla v. Kentucky</u>, ___ U.S. ___, 130 S.Ct. 1473 (2010), decided March 31, 2010, which reviewed a state habeas petitioner's claim that his defense attorney failed to advise him that his plea to drug trafficking charges would subject him to automatic deportation. He alleged that his attorney not only failed to advise him about deportation but told

him he "did not have to worry" about his immigration status because he had lived in the United States for over 40 years.  The Supreme Court held that Padilla alleged a constitutional violation under Strickland v. Washington, 466 U.S. 668 (1984) because the immigration statute explicitly mandates deportation for controlled substance offenses.  The Court also noted that "When the law is not succinct and straightforward ..., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  Id. at 1483.

Even if Miranda might benefit from the result reached in Padilla, which involved mandatory deportation, Section 2255(f)(3) requires her to have filed her petition within one year of that decision.  She did not file her motion to set aside her guilty plea until May 3, 2012, more than two years after Padilla.  Her motion for relief under Section 2255 is therefore untimely.

Blanton v. United States, cited by the Government for the principle that Section 2255 relief is unavailable here, primarily addressed Blanton's petition for a writ of coram nobis.  Blanton had been convicted of several federal offenses; his direct appeal was rejected, and he had filed two subsequent Section 2255 petitions on various grounds, both of which were denied.  Three years after the denial of his second petition, he sought a writ of error coram nobis, alleging that his trial counsel was

ineffective and was not properly licensed to practice law at the time of his representation.  The Sixth Circuit noted that a writ of error coram nobis is used "to vacate a federal sentence or conviction when a Section 2255 motion is unavailable - generally, when the petitioner has served his sentence completely and thus is no longer 'in custody' as required for Section 2255 relief." Id. at 231.  The court noted that use of this common law writ was recognized in United States v. Morgan, 346 U.S. 502, 506 (1954), and that the Sixth Circuit later held that it may only be used to review errors "of the most fundamental character, that is, such as rendered the proceeding itself invalid."  Blanton at 231, quoting Flippins v. United States, 747 F.2d 1089, 1091 (6th Cir. 1984).  A petitioner must demonstrate "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known."  United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001).  The equitable doctrine of laches applies to petitions for coram nobis relief. Blanton, 94 F.3d at 232.

In Pilla v. United States, 668 F.3d 368 (6th Cir. 2012), the court recently affirmed the denial of coram nobis relief to the petitioner, who alleged that her trial counsel gave her bad advice about the immigration consequences of her guilty plea to charges of making false statements to the FBI.  Her lawyer had

consulted an immigration attorney about whether her plea involved an aggravated felony for immigration purposes; that attorney opined that "in all likelihood" it would not be treated as such, and that Pilla would likely not be deported. But an immigration judge later concluded that it was an aggravated felony, and she was found to be removable from the United States. She sought coram nobis relief after being released from prison, which the district court denied. The Sixth Circuit affirmed, noting that under <u>Strickland</u>, she must show both deficient performance by her lawyer and resulting prejudice. With regard to the first, the court noted that <u>Padilla</u> was announced "years after" Pilla's attorney rendered the advice, and it was uncertain if such a duty could be imposed retroactively. Even if it could, Pilla had not demonstrated prejudice. There was overwhelming evidence of her guilt, including FBI interview notes documenting her confession to the crime. The court noted that she had no rational defense, and would have been convicted if she had gone to trial. Moreover, her conviction would not have changed the immigration consequences of her offense, and thus she could not show that the attorney's advice altered the outcome of her case.

Construing Miranda's motion as a coram nobis petition, the Court finds that she is not entitled to relief, as the Court cannot conclude that her attorney's alleged error altered the outcome of her case. The record before the Court revealed that

she was apprehended by local police officers as she and Taboada left a Best Buy store with over $5,000 of merchandise purchased with a fraudulent credit card. They made similar purchases earlier the same day at a different Best Buy store, and the store had immediately contacted police. Inside the car they were about to enter when stopped by police was more merchandise and fourteen counterfeit credit cards. Miranda had been recorded on store videotape in locations in Cincinnati and Trotwood, Ohio helping Taboada make purchases, and witnesses saw her in the two Best Buy stores in Cincinnati on the day of her arrest. Gift cards worth $500 were found in her possession when she was arrested, issued by stores in nearby Ohio communities; Taboada told agents that he had recruited Miranda to travel with him in exchange for $500. Despite all this credible evidence of her guilt, Miranda now claims that she would not have pled guilty. Even accepting this contention, as the court noted in Pilla, no rational defendant in Miranda's position would have gone to trial when facing a probable conviction, which in turn would likely have resulted in a longer sentence.

Moreover, Miranda was clearly on notice that her guilty plea might have some immigration consequences. The government informed Miranda and the Court that due to the fact she was from Cuba she would not be deported. This advice is apparently correct, as she remains in this country. However, the pre-

sentence report explicitly stated that the ultimate decision with respect to her immigration status would be made by the immigration authorities.  Despite this notice and the fact that she was on supervised release for five years after sentencing, she apparently did not seek any advice about her status until 2012.  She offers no explanation for the delay.  Her trial lawyer's last representation of her was in the fall of 2005, when she unsuccessfully sought an order for early termination of her supervised release.  (See Doc. 59)  She clearly had more than sufficient time after that in which to consult with an attorney about her immigration status.  The Court finds that laches bars her petition due to her lengthy and unexplained delay.

    For all of the foregoing reasons, the Court must deny Miranda's motion to set aside her guilty plea.  (Doc. 76)  Her request for an oral hearing is denied as moot.

    SO ORDERED.

DATED: July 31, 2012        s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                                    Senior United States District Judge